Good afternoon. We are ready to call the first case, United States v. La Prade, number 1,500-1,700. My name is Diana Stavroulakis and I represent the appellant, Lamont La Prade, and I've reserved five minutes for rebuttal. I would submit to the court that La Prade's argument is the court's analysis in Lewis should apply to his situation as well. Can we start right with the standard of review, please? You jump into it as harmless error, and you didn't file a reply brief in the case, so we don't have the benefit of your response to what the government said, but right out of the start of their submissions, they point out that the error complained of was not preserved, and so we're under plain error review. How, if at all, are they wrong in that assertion? La Prade's theory is it is harmless error. He couldn't have preserved this objection and raised an Elaine claim before that was even eligible to him. At the time, the law of the land was Harris, and so the wording in the indictment and the wording in the charge to the jury wouldn't have been objectionable at that time. Well, I don't understand that. The indictment was under subsection 3, and therefore it required the discharge of the weapon, and the judge didn't charge the discharge of the weapon. So I understand it. Although the indictment, sometimes the indictment is only under the general part of the section that starts it, but this one went right to 3. 1, 2, 3 was the little numbers, and he should have objected to the charge to the jury, but he didn't object, and then the next day the judge said, do you have any objections to the charge I gave, and he still didn't have any. He had a standby order. Well, this is my opinion on that. There are some other cases where that objection was made, and the district courts denied the objection because, as I said, Harris was the controlling law. Those elements were things that the court could have resolved for themselves. It didn't have to be submitted to the jury, and I think it was standard just to write up the indictment and leave out that word, discharge, and that is exactly how it was charged to the jury. Well, it wasn't so much as leaving it out. I mean, you correctly point out that not only was the right charge not given, but the wrong charge was given. I mean, the verdict sheet and the charge just talked about use. It didn't mention discharge at all. That's correct. And they were told the instructions were explicit. You don't have to find discharge, right? I mean, wasn't that in the instructions themselves? Yes, that was in the instructions themselves, and, of course, a person can be convicted of a lesser part of a crime. I mean, there was no reason for the parade to have to object at that point. That's so puzzling to hear you say there's no reason. If you're being charged under a statutory subsection, which carries a heavier penalty, and the court is instructing and giving a verdict sheet that says you can be held liable for a less culpable behavior, regardless of what Harris says, why wouldn't you object? More to the point, let me ask it to you this way. Address the Cotton case. Why isn't it precisely analogous to the circumstances you're facing? In that case, the defendant was facing a similar circumstance and didn't make an objection under Apprendi, and the court did not say, oh, well, you couldn't have done it, harmless error. It applied plain error review, right? It did, but there's a factual distinction. Is that one the drug case or another gun case? I'm getting my cases confused. If it was the drug case, I think the point was that the indictment did say greater than a certain amount of drugs, but then that part was not submitted to the jury, and that's not what we have here. We have the indictment wording was exactly the charge to the jury, which would have been all right under Harris. I mean, what would have been his prejudice at that point if he made the objection? There wouldn't have been any because the district court would have still been able to conclude that. Or perhaps the district court would have said, hey, that's a problem. Maybe we should have the jury actually, maybe we should do something to conform the indictment so that the language of the elements is actually in the indictment itself. Maybe we should actually instruct the jury to find this out of abundance of caution. You know, there's a whole bunch of things that could have happened, but we won't know whether they'll ever happen because the objection was not raised. That's the point, right? That is the point, but what I'm trying to say is a person can always be convicted of some lesser included offense, and certainly the first tier is the caring and using. So if that's what they were charged with and that's what they found him guilty of, why is it upon the prey then to say, oh, no, give them more to find guilty of? You know, it's reasonable to think that they could have taken that evidence and just convicted him of. But he was only charged under three. He wasn't charged. There wasn't any discussion of lesser included offenses. He was charged for the maximum possible offense under three. The court didn't require that the jury find the discharge, and they convicted him. They convicted him under the statute. They couldn't have convicted him under something he wasn't charged with. He was charged with three. He was charged with three, but the wording was caring and using. If I had been the district judge, it's great sitting here to see because you're always looking back at what you would have done, but I'll take that liberty. If I had been the district judge and he said, I think you have to charge that he discharged it, I would have said, be my guest, I'll charge it. I mean, if there was ever a clear case, you couldn't invent a better case than this one on the facts. But that's another point I wanted to make is that I think Apprendi and Alene both say that we can't really go back and review the facts. And the harm to my client by doing that is that you're still depriving him of the substantial right, his right to have an impartial jury try that essential element that's going to increase his sentence from five years to ten years, consecutive to the other sentences that he had. Isn't Lewis really an apposite here? You rely on Lewis here. The way I find them similar is they both have the indictment and the conviction under the exact same wording, but then the court sentences under another subsection. And that's what happened here. And there was an objection in Lewis? It was preserved, right? They made an objection, but it certainly wasn't based on Alene because Alene hadn't been decided then. So they made an objection on some basis, but that shouldn't stop my client. It was based on exactly what your client could have objected to, precisely the thing your client could have objected to. They said it's not appropriate for us to be facing this charge when the indictment speaks in terms of use and carry and I'm facing brandishing. Your client was in an even more extreme position because of the discharge of the firearm, right? If we look at the facts, yes. When you say we look at the facts, isn't it the case that this fact, the discharge of the firearm, is actually uncontroverted? It is. Okay. So we're not in the position of weighing facts, are we? We're looking at facts that are completely agreed on so it's not a matter of depriving your client of some jury determination. It's in effect like a stipulation. He says he discharged the firearm. Government says he discharged the firearm. Completely uncontroverted, correct? But I think the problem with that is had the wording been in there in the indictment and given to the jury, maybe he goes about trial a different way. So you can't rewrite what happened. He went by what the indictment said and then the jury charge was exactly what the indictment said. So how can he be tasked with, number one, presenting a defense for something that's not listed in the indictment or charged to the jury or making a claim that doesn't even become ripe until after his sentence was affirmed on direct appeal? Well, that's a great question and you could address, if you would, the Cotton case. Go ahead and take that on because that was the circumstances in Cotton except facing a mandatory, instead of a mandatory minimum, they were facing the Apprendi problem, right? That was Apprendi and I think the problem there, they did object, but the district court denied the objection. So I guess what I'm saying is what would have been the point of him preserving it or making that objection when the law of the land was Harris under Apprendi? Well, I'm not asking you that. I'm trying to get you to grapple with Cotton itself. Assume just for the sake of discussion that we were not inclined to agree with you that this is harmless error review. Take Cotton as it is. The Supreme Court is reviewing an Apprendi problem under plain error and tell us how you're not boxed in by that. I think that you have to consider the fundamental rights and the substantial rights that you're depriving of. Apprendi and Allain both say that any element that increases either gives the mandatory minimum or mandatory maximum has to be an element that goes to the jury. And the minute that you deprive that right, you've deprived a substantial right. And we can't go back and reassess the facts. Well, Cotton says we're not going to dwell on that. We're going to the fourth prong of the plain error test, and we're going to say in the face of absolutely overwhelming evidence, there's no miscarriage of justice here in effect. So you lose under plain error. Are you in a different spot? I think that that's completely incorrect in this case. I think, first of all, to go back and have it charged to the jury, indicted, worded differently, first of all, he may have approached Trout differently. Same thing could have been said about Cotton. That's what you've got to try to meet. Can you distinguish Cotton? Well, under plain error, then, if the court believes that that's what's appropriate, the error being that the jury wasn't asked to determine a certain element, okay. Then the only way of coming to the conclusion that he should receive that mandatory minimum that increases from five years to ten years is by us reviewing the preponderance of the evidence or the overwhelming evidence. And I think that's just completely contradictory to the holding, to the reasoning behind Aileen and Apprendi. They're saying that that's something that cannot be done. I just have one more question. And when I got done reading this, I must tell you it's always good to have a clerk because I viewed it originally as a sentencing problem, and he pointed out, no, it's really a charging, and I think that's right, the charge to the jury problem. But it occurred to me, if it's a charge to the jury, what relief do you want? Do you want us to remand the matter for a new trial, and then the judge can charge the jury correctly, and then we can find out whether or not you fired the weapon? I mean, why should he be relieved of it? I mean, if there's an ordinarily, when there's a mistake or a charge to a jury, the remedy is if it's prejudicial, you remand it for a new trial, okay? So let's assume this is prejudicial error. So we remand it for a new trial. Should we do that? I think we would just remand it for resentencing because the mistake, we're talking about the discharging, the mistake to the jury is still the mistake that was left out of the indictment. I'm sure now the indictments probably include the word discharge, but they found him guilty of exactly the same wording that he was indicted on, and then the error became at sentencing when the judge went up to the aggravated minimum of 10 years. So I would say leave the conviction alone. They did what they were asked to do. They did what coincided with the indictment. Send it back to correct the sentence. What, if any, response do you want to make to the government's 28-J letter? They submitted a 28-J letter that said we shouldn't even be thinking about this because you're trying to define it all. Yeah, they did not address that when we filed our briefs in the matter, but they did file the 28-J last week. I would say that, again, this issue isn't waived because it wasn't available to Mr. LaPrade at the time he went to trial, and I think he raised it at the earliest point he could have, which is by filing the 2255. So, again, you can't waive a claim that you didn't know existed at the time. All right. Thank you. We'll have you back on the phone. Mr. Ivory. May it please the Court, my name is Michael Ivory. I'm an assistant U.S. attorney from Pittsburgh. Good afternoon, Your Honors. Hi. You want to start with your 28-J? Is there something more than a little ironic about the government saying that we should overlook a failure to include something in a brief so that we can accept an argument that the defendant should be penalized for a procedural fault for failing to raise an argument in a brief? The irony is not lost upon me, Your Honor, and as I did indicate in the letter I did want to apologize for not raising that in my initial brief. We did raise it in our response to Mr. LaPrade's 2255, and then whenever we were dealing with the objections to Judge Ambrose's initial decision, I denied the 2255. I did point out that I incorporated that argument. I raised that argument by incorporation saying that, you know, we are not abandoning procedural default in this case. In fact, we would reemphasize it. Judge Ambrose never did address that particular point in the ultimate opinion that is on appeal here, and again I do want to apologize for not mentioning or raising that in my initial brief to the court. Well, to get a procedural default in place, you have to allow, I guess, you have to allow for the fact that the defendant can overcome it with the showing of cause and prejudice, right? Yeah. So here you've heard your learned opponent say Harris was the law of the land. Everybody understood Harris to be the law of the land. For this claim to really have meat, the Supreme Court of the United States had to reverse itself, and if that's the case, that should certainly be the kind of thing that, you know, constitutes something so novel and different that it could be viewed as cause for failure to raise an issue, right? Well, then you have to look at the fact that in Lewis itself, the defendant raised the very same objection that Aileen ultimately resolved. True enough, but are you going to deny that it took a Supreme Court precedent overruling, controlling Supreme Court precedent to make this claim one that wouldn't have been rejected? It is established within the context of collateral challenges that futility does not constitute cause, and also in this case, Aileen was decided while Mr. LaPrade's appeal was still pending technically on direct appeal. It had not yet been finalized. He had 40 days to seek relief with the Supreme Court. He could have asked, as a number of defendants did in the wake of Aileen, to have the matter remanded for re-hearing or for reconsideration by this court. Well, could have, but the question precisely isn't all the things that the person might have done. It's really, as you framed it correctly, you didn't raise it on direct appeal, and therefore there's a problem. And Reed v. Ross, Supreme Court case says, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim. Now that's the U.S. Supreme Court speaking, and I'm just asking you if we're not in that zone here because Harris was the controlling law of the land. Even assuming if cause is established under Reed, he still has to show actual prejudice, and if he has to, he has to pretty much show that actual prejudice is... How about 5 extra years mandatory minimum, that's not prejudice? No, it's not prejudice. It's not actual prejudice because you have to look at the evidence in that case. So if the evidence were not... If the evidence were in fact controverted, you wouldn't be able to make this argument, is that right? I still think that whenever the court... Well, you know, it's interesting because in the Frady case, on direct appeal, the defendant did controvert the evidence. He said that I did not kill this... I think Becker was the victim's name. I did not kill that individual with malice. And he abandoned that on collateral review. So to that extent, that's a different issue because in this case, the evidence is uncontroverted that Mr. LePrade discharged his firearm during the course of a bank robbery. Does it make any difference that the judge charged the jury wrongly, not just that the judge omitted a charge, the proper charge, but charged wrongly as well as the verdict slip representing that? And even charged, you know, you don't have to find discharge in the instruction. Does that change anything here? If we're looking at this through the lens of plain error, then that is an alien error. I mean, I would be disingenuous to say it was not an alien error. But still, what we have to do, what this court has to do, is if we're looking at this in terms of actual prejudice as a collateral matter, or if we're looking at this within the context of plain view, plain error, I'm sorry, the evidence still has to be considered to determine whether or not actual prejudice has been established or if plain error has been established, if substantial rights have been affected. And in light of the evidence in this case, the admission by Mr. LePrade that he discharged his gun, the discovery of a partially full box of .45 caliber ammunition in his apartment or his house down in West Virginia, his admission that he brought a .40 caliber to the heist, the discovery of You have to weigh evidence then, right? You have to look at the evidence. This court has to look at the evidence. Correct. Now, how does that not create the problem that the Lewis plurality was talking about? The whole point of a lien and of apprendi is to tell the courts, in effect, butt out, don't start weighing evidence. That's not your job. You're not supposed to be in that lane at all. And yet you're saying, well, get in that lane and start weighing evidence because once you do that, you can see we'd win anyway. Isn't that precisely what a lien and apprendi are supposed to avoid? Well, because within the context of the Lewis plurality decision, that was a preserved error. So that would be a harmless error, analysis under 52A, rule 52A. And under that particular set of circumstances, pursuant to the plurality opinion, this court cannot look at the evidence because to do so, as per the decision in Lewis, the courts would run afoul of a lien. So a lien is what it is, says what it says. But what you're saying is on plain error, we don't really pay attention to what its central message is. We go ahead and get in there and start weighing evidence. On plain error, yes. I want you to help me out, if you can, with something the district court said because I have a lot of respect for this district court judge. She's an experienced and wonderful judge, but I was nonplussed. She says, I think it's page three of the slip opinion, defendant's sentence was, ellipses, based on his conviction of the conduct charged in the indictment. The full sentence is defendant's sentence was not expressly based on facts found by a judge, by a preponderance of the evidence, but instead was based on his conviction of the conduct charged in the indictment. So it looks like that's an acknowledgment that the jury didn't find it, or we don't know what the jury did. And the judge is expressly saying, and I didn't find it. And yet, without the judge or the jury finding it, the assertion is he can be convicted of the more extreme conduct. Am I reading it right? I think when you look at the district court's opinion and Judge Ambrose's analysis of what occurred, the indictment in this case did charge the correct subsection of 924C. We could argue about that, too. You said subsection 3, but you didn't include the elements of the offense in that, did you? The indictment specifically charges use and carry. It does not charge discharge, does it? That's correct, and I did point that out in my brief, Your Honor. Okay. So it's not really a fair characterization in the indictment to say it charged an offense under subsection 3, because although it noted subsection 3, it did not include the elements, which, of course, you have to include in an account of an indictment for it to be an accurate charge, correct? That is correct. However, when we are assessing the validity of an indictment, it has to be looked at in its totality. And again, Mr. LaPrade does not specifically fault the indictment in this case. No, I think what Mr. LaPrade's counsel is saying is this charged the lesser offense. You might have said sub 3, but that isn't what you charged. It doesn't matter how many small Roman eyes you want to stick at the end of the statutory subsection. When you get into the text of the count, the count charges use and carry does not charge discharge of a firearm. So their position is, yeah, we like what that count of the indictment said, because it didn't charge him with discharging the firearm. Yes, but also with respect to the conspiracy count, it's specifically alleged that Mathis and LaPrade each discharged a firearm during the commission of the bank robbery. How does that help you? Are you suggesting that we can assume or guess that the jury may have understood and incorporated a part of another count into that separate count and did so especially in the face of the district court specifically instructing the jury that they didn't have to find discharge? Well, that is the heart of the Alene error in this case, that the district court should have used the word discharge. Right, so I'm not sure how you get any traction by going to the overt acts. Well, to the extent that the court is concerned that the indictment does not provide fair notice as to what has been charged so that Mr. LaPrade can't plead double jeopardy as a bar, has no idea what he's being charged with, I think when you look at the indictment as a whole, its totality, it does provide him with notice that the government is charging him with violating 924C A13 because you fired your gun during the course of the bank robbery. Let me just ask this. If that count 3 had been challenged in the district court, would the government have been able to prevail? I'm not saying they couldn't have amended it, they couldn't have gotten a superseding indictment, but as it stood, would that indictment count have provided a basis for conviction under subsection 3, having not included the elements of the offense? No, are you talking about the overt acts at 4th and the conspiracy? No, I'm talking about the count. Okay, count, I'm sorry, yes. The specific count 6 we're talking about here, right? Right, count 6. It couldn't have, right? It didn't name the elements, and there's no way around that, is there? Under a lien, it did not. To the extent that it's a fair lien. Go back 200 years. If you don't name the elements in the count, you didn't name the elements in the count. The indictment was drafted and issued back when Harris was the law of the land, back in 2010. At that point in time, that indictment would have been fine, especially whenever we have a specific... The Supreme Court could have had a sentencing fact-finding for an enhancement, but that would have been a sentencing enhancement and not a conviction for discharge because the indictment didn't charge discharge. Am I right or wrong about that? The indictment did not use the word discharge, but it did cite to the correct section for discharge. You mentioned in a footnote in your brief that in the late 80s, the U.S. Attorney's Office for the Western District submitted an indictment memorandum. Yes, it's a practice that grew up at that point in time, yes, Your Honor. Pardon? That's a practice that developed at that point in time. Yeah, and did the memorandum, did it recite what was in the indictment here, or was it different? I'm just wondering the significance, if any, of it. The indictment memorandum typically sets forth the elements of the offense as well as the different penalties associated. If I could check the appendix very quickly to see what it exactly says, I'm pretty sure that it did, but I don't want to represent to the court that it did. What did, sir? The indictment memorandum, Your Honor, if it correctly recited the provisions of... Well, you can look at it. I don't think it did. I actually think what you said in the indictment memorandum was that the essential elements of Count 6 were, one, that the defendant committed the crime of violence charged in Count 2, that's armed bank robbery, and two, that the defendant knowingly used and carried a firearm in relation to the crime of violence charged in Count 2 or knowingly possessed the firearm in furtherance of said crime. I think that's what it says. At that point, that was an accurate statement of the law, but it also goes further to say that if the firearm is discharged, there is a sentence of a mandatory minimum of 10 years consecutive. So it does provide some illumination or elucidation, but could it be as clear as is required now under Eileen? I don't think it would be at that point, no. Let's talk for just a moment, if my colleagues indulge me, about plain error. In Cotton, the Supreme Court says, well, we can't let this stand because it would be contrary to the fourth prong of the plain error test. It would be, in effect, a miscarriage of justice to let him off on what looks like a technicality. Now, in this case, rather than worrying about somebody getting a drastically reduced sentence on a technicality, the district court could give LaPrade the same sentence if that is the just result, right? In other words, the court could have said, irrespective, the same sentence could have been imposed. I'm sure Judge Ambrose could have said that. So that doesn't quite square up with Cotton, does it, where the court was saying we really can't let this go by the boards and give you relief because there's this problem of people holding the justice system in disrepute because a person will get a drastically reduced sentence based on a legal technicality. I'm paraphrasing loosely. But here, that risk doesn't exist because the court can give the very same sentence that thinks is just irrespective of the mandatory minimum, right? Well, I would have to look to see what – we would have to figure out what the various scenarios would be. I don't know what the penalties would fall at this point. Well, the court, it would be within the guidelines, right, for the court to have gone to 10. And even if it had, it could vary upward, right? Certainly within the statutory maximum to go to 10 years. I'm trying to recall what did occur at sentencing in this case. And I know that there was a question concerning whether or not the defendant was a career offender. And I believe that that did not come into play. It didn't. The court did not sentence on the basis of career offender status. That's correct. So my question to you is, when you're talking about mandatory minimums, as in a lien, you're talking about something that has got a meaningful difference from the apprendee problem that the court faced in Cotton. Do you not? Well, you know, apprendee deals with the ceiling and a lien deals with the floor in terms of sentencing. Yeah, exactly. And the problem that the court identified in Cotton was, if we don't deal with this and you get something substantially reduced, that's a bad thing for public perception. But that's just not a risk here, is it? Well, it is a risk here because in a lien, we dealt with a, in Cotton, there was a mandatory drug quantity that triggered the applicability of the particular sentence, as in this case where Mr. LaFraye's admission, I discharged my gun at that SUV when I was trying to escape the bank, establishes that. You couldn't have gone above what the court, in Cotton, the court could not have gone above the maximum penalty associated with the unspecified drug quantity. Here, because it was a statutory maximum, here, with a lien, we're talking about a statutory minimum, and the court could go as high as the court felt it needed to within the statutory maximum, and that's just not an issue, right? But the court could go lower in this case in contravention of what Mr. LaFraye admitted to and what the uncontroverted evidence of this case is. Okay. All right. So you think it's an immaterial difference? I'm not comfortable saying anything is immaterial at this point, but I think that there is a nuance, there is a distinction involved here. Okay. All right. Thank you. Thank you, Your Honor. Thank you. Okay, we'll hear a vote. One of the things I wanted to point out was that the indictment charging wording being exactly the same as the jury instruction, I do think that makes a difference in this case, and I don't think it matters that somewhere else a word is written that the government is suggesting we can read and incorporate into another charge. I don't think that's what Mr. LaFraye was required to do to be on notice, and that's not how the jury would be expected to find someone guilty of a specific element of a crime. Could you speak to the prejudice element of cause and prejudice, if it is in fact the case that your client is facing a procedural default for not having raised this on direct appeal? Well, he couldn't have raised it at trial or on direct appeal because Aileen hadn't been. I understand your argument there. I'm asking you to take a step past that. Assume for the sake of discussion we were concerned there was a procedural default. How would you show cause and prejudice? The cause being that at the time of his trial, Harris was the law of the land. There would have been nothing for him to object to. The prejudice now at this point under Aileen is that he was deprived of having that element reviewed by the jury before the judge could just look at the facts and say, okay, we have enough to increase his mandatory minimum to 10 years. And I think that's really the bottom line here. I think that the substantial right in question is your right to an impartial trial by jury. So the deprivation of the right itself. The deprivation of the right itself. Judge Shuren raised the question of what the sentence could have been. Let's assume there wasn't three didn't even exist, C3, so there was no mandatory. What would the defendant have been sentenced under? Five years less than mandatory minimum. What section would it be? They write these things. It's not the easiest thing to follow. Do you mean just for using and carrying? No, but this says it's a minimum. In addition, it says except to the extent that a person is provided, any person shall be sentenced not less than five years. If you took out, then, three, what would the maximum sentence if three didn't exist have been in this case? If the court said that there's no three doesn't exist and I'm not sentencing with it, let's suppose the judge said, well, I didn't charge the element, so I'm just going to forget three. Could the judge have given the same sentence? Well, the judge would have at least had to have given the five years. But could the judge have given the ten years? I think she could have. I didn't address that part. So maybe the simple solution is to just remand the matter and tell her to resentence and then see what she would do. But we can't do that at this point based on the new law of ALEEM. Because now you're allowing her to again. No, it wouldn't be because of ALEEM. It wouldn't be because she felt that she was compelled by the law to give a sentence of not less than ten. You can have a law with a minimum sentence, and then you can say, well, I'm really not interested in that section. I'm going to give a much longer sentence. Well, she also considered the guideline recommendations, which were substantially lower. I believe it was 120 months. I'm just saying, could she do it? Could she do it? Would she do it? Well, I'm a little surprised because I thought the relief you were asking for was indeed that we send it back for resentencing. I do want it sent back for resentencing, and I'm assuming that the mandatories would be applied and that he received other sentences as well, so it's still going to be consecutive. You want a remand with direction. Pardon? You want a remand with direction. I'll just be careful what you ask for. You might get it. I mean, you might not like it. May I ask the court then if I could submit something after argument, very brief, addressing that exact point? Which exact point do you want to address? All the options of what sentencing could have been if it was sent back, and she could have used her discretion to apply sentences to Section 1 and then whatever discretion she could have used. Sure. If you would like to submit a very brief letter of memorandum, no more than five pages, if you send that to us within a week and I'll give your opponent an opportunity. Probably the easiest thing is to have you both submit within a week cross-submissions and then another week for any cross-reply. I appreciate that, Your Honor. Thank you. The cross-reply, likewise, should be limited to no more than five pages. All right. If there's nothing else. I have nothing else. Okay. Thank you. Thank you.